**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 23, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MATTHEW RYAN SHERMAN,

     Plaintiff - Appellant,

v.

WILLIAM KLENKE, N.P.; DOLORES
MONTOYA, H.S.A.; TIMOTHY
CREANY, M.D.; STEPHEN KREBS,
M.D.; CORRECTIONAL HEALTH
PARTNERS; JOHN DOE,

     Defendants - Appellees.

No. 15-1378
(D.C. No. 1:11-CV-03091-PAB-CBS)
(D. Colorado)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **GORSUCH**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

Matthew Ryan Sherman, a prisoner currently in state custody and proceeding

pro se, appeals the district court's dismissal and grant of summary judgment in favor

of the defendants on his claims under 42 U.S.C. § 1983. In his complaint, he raises

Eighth Amendment and state-law negligence claims against various prison officials,

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

alleging the initial denials of his request for hernia surgery, as well as the inadequate pain medication prescribed before surgery was ultimately approved, caused him unwarranted pain and suffering. With respect to his federal claims, Mr. Sherman failed to sufficiently allege or to provide evidence that any of the defendants acted with the deliberate indifference necessary to establish an Eighth Amendment violation. Accordingly, we affirm. But we reverse the district court's dismissal of Mr. Sherman's state-law claims because the record is insufficient to determine as a matter of law that Mr. Sherman must comply with Colorado's certificate-of-review requirement.

## I. BACKGROUND

### A. *Factual History*

This case arises out of Mr. Sherman's complaint, filed in the United States District Court for the District of Colorado, seeking relief pursuant to 42 U.S.C. § 1983 against William Klenke, N.P.; Dolores Montoya, H.S.A.; Timothy Creany, M.D.; Stephen Krebs, M.D.; Correctional Health Partners (CHP); and John Doe. Mr. Sherman was incarcerated at the Fremont Correctional Facility (the Facility) in Cañon City, Colorado. Mr. Klenke was Mr. Sherman's primary medical care provider, Ms. Montoya was the Health Services Administrator for the Facility, and Dr. Creany was Mr. Klenke's direct supervisor. All three were employed by the Colorado Department of Corrections (CDOC) and were involved directly or administratively with Mr. Sherman at the Facility. CHP and Dr. Krebs (who worked

2

for CHP) were under contract with CDOC to perform services related to the medical treatment of inmates.

On or around May 26, 2011, Mr. Sherman notified the prison medical office that he believed he had a hernia. On June 6, 2011, Mr. Sherman visited with Mr. Klenke, who confirmed that Mr. Sherman had a reducible right inguinal hernia. Mr. Klenke prescribed stool softeners to assist with straining and an abdominal truss for support while standing; he also ordered a lower bunk restriction (which Mr. Sherman declined) and a work restriction on heavy lifting. At the time, Mr. Sherman already had a prescription for Motrin,[1] so Mr. Klenke prescribed nothing further. He also referred Mr. Sherman to an outside physician—Eric H. Rieger, M.D.—who later determined that surgery for the hernia was warranted. Dr. Rieger did not prescribe any pain medication on that visit and later attested that "[a]s a general practice, I do not recommend pre-operative pain medications to patients suffering from inguinal hernias."

As time passed, the pain associated with Mr. Sherman's hernia increased. Mr. Sherman requested additional pain medication a number of times, and Mr. Klenke increased the dosage of Motrin in response. Because Mr. Sherman's complaints of pain continued, Mr. Klenke eventually prescribed Tylenol #3,[2] renewing that prescription on multiple occasions. On July 6, 2011, Mr. Klenke again

---

[1] Motrin is one brand name for ibuprofen, a nonsteroidal anti-inflammatory drug (NSAID) used to help manage mild to moderate pain and inflammation.

[2] Tylenol #3 combines acetaminophen, a mild analgesic or pain reliever, with codeine, an opioid narcotic, and is used to treat moderate to severe pain. Drugs.com, http://www.drugs.com/mtm/tylenol-with-codeine-3.html (last visited June 3, 2016).

3

met with Mr. Sherman and confirmed that a second hernia had developed—this time on Mr. Sherman's left side. Mr. Klenke instructed Mr. Sherman to manage the pain by alternating the Motrin and Tylenol #3 under his existing prescriptions. On July 11, 2011, Dr. Rieger's office reported that CHP had denied Mr. Sherman's request for surgery. Mr. Klenke then renewed Mr. Sherman's prescription for Tylenol #3 but decreased the dosage.

In the weeks that followed, Mr. Sherman messaged and met with Mr. Klenke numerous times to complain that the medication was not sufficiently alleviating his pain. He also requested an appeal of the denial of surgery, and Mr. Klenke sent a letter in support of this request. Although Mr. Klenke did not increase the dosage of Mr. Sherman's pain medications, he continued to renew Mr. Sherman's Tylenol #3 prescription through July 25, 2011, at which point he discontinued the prescription. In the roughly three months that followed, Mr. Sherman complained of pain many times, and Mr. Klenke instructed Mr. Sherman to continue taking Motrin as needed. In Mr. Klenke's affidavit, he notes that hernias "are not typically associated with pain and rarely require pain medication for management of pain" past the initial tear.

Shortly after Mr. Sherman's Tylenol #3 prescription was discontinued, he reported being injured while working and was seen in the Facility clinic on an emergency visit. A different nurse attended Mr. Sherman, noting no change in his condition and prescribing nothing further. Mr. Klenke in his affidavit notes "[i]t was suspected that Mr. Sherman was trying to obtain more narcotic pain medication."

4

On August 8, 2011, CHP again denied Mr. Sherman's request for surgery. Mr. Klenke also decreased the dosage of Mr. Sherman's Motrin medication from three tablets daily to two. On August 16, 2011, Mr. Klenke met with Mr. Sherman in the Facility clinic and noted that both hernias had increased in size. Mr. Sherman claimed the pain was getting worse and he felt as though the hernia was tearing into his testicle. Mr. Klenke requested another surgical consultation, which was approved on August 25, 2011.

Both Mr. Sherman and his mother contacted Ms. Montoya, the Facility's Health Services Administrator, requesting that Mr. Sherman be seen by a different provider. The request was never granted. Ms. Montoya was not involved in treatment decisions, was not qualified to issue prescriptions, and was not authorized to change prescriptions issued by medical staff. On August 26, 2011, Dr. Creany received a step 2 grievance form from Mr. Sherman, asking for additional pain medication and claiming that Mr. Klenke and Ms. Montoya were not providing adequate treatment. Dr. Creany denied the grievance, noting that "motrin is reasonable for pain and you may ask for a truss if you do not have one. No other treatment is possible at this time due to the repeated denials of surgery."

In the weeks before and after filing his grievance, Mr. Sherman messaged Mr. Klenke multiple times to complain that his pain medication was not working. Mr. Klenke did not change Mr. Sherman's prescription, noting also during a visit on September 14 that Mr. Sherman was not wearing the prescribed abdominal truss. Mr. Sherman met with Dr. Rieger on September 29, 2011, for the second surgical

5

consultation. Dr. Rieger again recommended surgery and noted that the hernias had increased in size and that Mr. Sherman complained of increased pain.

On October 24, 2011, Mr. Klenke increased the dosage of Motrin back to three tablets daily. He also informed Mr. Sherman that his request for surgery had been approved for early November. Mr. Sherman underwent surgery on November 2, 2011, and was prescribed Tylenol #3 for post-operative pain. While conducting the surgery, Dr. Rieger discovered and removed a "sizable lipoma,"[3] which may have contributed to Mr. Sherman's pain.

**B.** *Procedural History*

On November 28, 2011, Mr. Sherman filed his initial complaint, raising Eighth Amendment claims against Mr. Klenke, Ms. Montoya, and Dr. Creany. He later amended his complaint, adding additional claims and parties, including a negligence claim against Dr. Krebs, CHP, and an unidentified "John Doe." On April 6, 2012, he filed a Third Amended Complaint asserting claims against the defendants for deliberate indifference to his medical needs in violation of the Eighth Amendment and for state-law negligence.

In response, CHP and the other defendants filed separate motions to dismiss. Mr. Sherman responded to each motion and also filed a motion for leave to amend his complaint together with a proposed Fourth Amended Complaint. In this motion, he

---

[3] A lipoma is a "slow-growing, fatty lump that's most often situated between [the] skin and the underlying muscle layer." Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/lipoma/basics/definition/con-20024646 (last visited June 3, 2016). It "feels doughy and usually isn't tender." *Id*.

6

stated that he "realized he needs to be more specific with facts" to support his allegations and that the new complaint would clarify the nature of the defendants' alleged deliberate indifference. All of the defendants opposed the motion for leave to file the Fourth Amended Complaint.

The magistrate judge recommended that Mr. Sherman's Eighth Amendment claims against Mr. Klenke and Ms. Montoya be permitted to proceed, and that he be granted leave to amend his complaint on those claims, but only on the theory that those defendants denied Mr. Sherman pain medication. The magistrate judge further recommended that all other claims against Mr. Klenke and Ms. Montoya be dismissed. In addition, the magistrate judge recommended that the Eighth Amendment claim against Mr. Creany and Dr. Krebs be dismissed with prejudice and that the negligence claims against Dr. Krebs and CHP be dismissed unless Mr. Sherman provided the certificate of review required by Colorado law as a prerequisite to filing a professional-negligence claim.[4] Mr. Sherman objected to the magistrate judge's report and recommendation, but the district court accepted the recommendation and dismissed all claims except for Mr. Sherman's Eighth Amendment claims against Mr. Klenke and Ms. Montoya. In particular, the district

---

[4] As explained in the magistrate judge's recommendation, Colorado law requires plaintiffs in every action for damages premised on professional negligence of a licensed professional to have their attorney "file with the court a certificate of review for each . . . licensed professional named as a party." Colo. Rev. Stat. Ann. § 13-20-602(1)(a). The certificate must declare that the attorney for each plaintiff "has consulted a person who has expertise in the area of the alleged negligent conduct" and such expert "has concluded that the filing of the claim . . . does not lack substantial justification." *Id*. § 13-20-602(3)(a)(I) to (II).

7

court dismissed with prejudice Mr. Sherman's Eighth Amendment claim against Dr. Krebs but dismissed without prejudice his state-law negligence claim, directing Mr. Sherman to file a certificate of review as required by Colorado law. The district court also permitted Mr. Sherman to file the Fourth Amended Complaint.

In response, Mr. Sherman filed a motion seeking a waiver of the certificate-of-review requirement, claiming its application to pro se inmates "unconstitutionally hinders access to the courts in violation of equal protection and due process of law." The magistrate judge recommended denying the motion, and over Mr. Sherman's objections, the district court accepted that recommendation. Because the court had already ruled on the applicability of the certificate-of-review requirement, it reviewed that prior ruling for clear error, ultimately accepting the magistrate judge's recommendation to deny Mr. Sherman's motion. Mr. Sherman also filed a motion to amend the order of dismissal, pursuant to Federal Rule of Civil Procedure Rule 59(e), which the district court also denied.

Mr. Sherman then filed his Fourth Amended Complaint, and, after some limited discovery, Mr. Klenke and Ms. Montoya filed a motion for summary judgment. The magistrate judge recommended granting the motion in favor of the defendants, concluding that Mr. Sherman's Eighth Amendment claims against both defendants failed because he had not demonstrated that Mr. Klenke and Ms. Montoya "knew [Mr. Sherman] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal quotation marks omitted). After a de novo review in

8

response to Mr. Sherman's objections, the district court accepted the magistrate judge's recommendations in full. The district court granted summary judgment to Mr. Klenke and Ms. Montoya and entered a final judgment the same day. Mr. Sherman then filed a Rule 59(e) motion to amend the summary-judgment order, which the district court denied—largely because Mr. Sherman simply reiterated the arguments the court had rejected in granting summary judgment.

On appeal, Mr. Sherman challenges several of the district court's rulings: (1) the order dismissing his claims against Dr. Creany, Dr. Krebs, CHP, and John Doe; (2) the order denying waiver of the certificate-of-review requirement; and (3) the order granting summary judgment in favor of Mr. Klenke and Ms. Montoya. We affirm the district court's rulings on Mr. Sherman's federal claims, but reverse its dismissal of Mr. Sherman's state-law negligence claims.

## II.   DISCUSSION

### A.   *The District Court Properly Granted Summary Judgment in Favor of Mr. Klenke and Ms. Montoya on Mr. Sherman's Eighth Amendment Claims.*

### 1.   Standards of Review

Mr. Sherman appeals from the district court's grant of summary judgment in favor of Mr. Klenke and Ms. Montoya, as well as from the district court's denial of his motion to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). "We review a grant of summary judgment de novo, drawing all reasonable inferences and resolving all factual disputes in favor of the non-moving party." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015) (internal quotation marks omitted).

9

"A court shall grant summary judgment if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "A movant is not always required to come forward with affidavits or other evidence to obtain summary judgment; once the movant points out an absence of proof on an essential element of the nonmovant's case, the burden shifts to the nonmovant to provide evidence to the contrary." *Hall v. Bellmon*, 935 F.2d 1106, 1111 n.5 (10th Cir. 1991). A nonmovant can properly oppose summary judgment with affidavits, but the "affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Id.* at 1111.

We review a district court's denial of a motion for reconsideration under Rule 59(e) for an abuse of discretion. *Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008). "Under th[e] [abuse of discretion] standard, a trial court's decision will not be reversed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005) (internal quotation marks omitted). A motion to reconsider under Rule 59(e) may be granted where there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A Rule 59(e) motion is not, however, an appropriate

vehicle "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id*.

## 2. The Deliberate-Indifference Standard

Mr. Sherman challenges the grant of summary judgment on his Eighth Amendment claims against Mr. Klenke and Ms. Montoya. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," which includes deliberate indifference to the serious medical needs of prisoners in custody. *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976). To prevail on an Eighth Amendment deliberate-indifference claim against prison officials, an inmate must satisfy "a two-pronged inquiry, comprised of an objective and subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The objective component, which the district court assumed was satisfied in granting summary judgment, is met where the deprivation is "sufficiently serious." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation marks omitted). The subjective component, which the district court concluded was not met, requires a plaintiff to demonstrate that officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Under this standard, "a prison official cannot be liable 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Self*, 439 F.3d at 1231 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

11

Such inference cannot be drawn when an inmate voices a "mere[] disagree[ment] with a diagnosis or a prescribed course of treatment," *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999), because the inmate has a constitutional right only to medical care—"not to the type or scope of medical care which he personally desires." *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (quoting *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)). Instead, the subjective component of this inquiry requires an inmate to provide evidence—whether direct or circumstantial—from which a jury could reasonably infer the medical officials consciously disregarded an excessive risk to the inmate's health or safety. *Self*, 439 F.3d at 1235. This is because the Eighth Amendment protects inmates from the "infliction of punishment"—it does not give rise to claims sounding in negligence or medical malpractice. *Id*. (quoting *Farmer*, 511 U.S. at 838); *see also Mata v. Saiz*, 427 F.3d 745, 758–59 (10th Cir. 2005). Indeed, even if a prison official's actions fell below a reasonable standard of care, "the negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Self*, 439 F.3d at 1233 (quoting *Perkins*, 165 F.3d at 811).

A deliberate-indifference claim faces "a high evidentiary hurdle." *Id*. at 1232. It is not insurmountable, "[b]ut where a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law." *Id*. at 1232–33. In reviewing Mr. Sherman's claims, we simply cannot conclude on this record—

12

even drawing all reasonable inferences in Mr. Sherman's favor—that Mr. Klenke's and Ms. Montoya's course of treatment can support an inference of deliberate indifference. We therefore affirm the grant of summary judgment in favor of both defendants.

### 3. Mr. Klenke

The essence of Mr. Sherman's Eighth Amendment claim against Mr. Klenke is that Mr. Klenke did not prescribe a sufficient level of medication to alleviate the pain associated with Mr. Sherman's hernias. Indeed, in his brief, Mr. Sherman argues that "[c]ontinuing to give Mr. Sherman nothing but Motrin for his pain when it was obvious that the Motrin was not helping the pain is a prime example of the cruel and unusual treatment" proscribed by the Eighth Amendment. In the recommendation adopted by the district court, the magistrate judge agreed, construing the dispute as one "over the adequacy or appropriateness of prescribed palliative care."

Although we do not discount Mr. Sherman's allegations of pain, a reasonable jury could not infer that Mr. Klenke's decision to continue to prescribe a lower level of pain medication stemmed from deliberate indifference. It is undisputed that Mr. Sherman complained of severe pain on multiple occasions in the months before his surgery and that Mr. Klenke specifically referred Mr. Sherman to a physician for a surgical consultation. Likewise, it is undisputed that Mr. Klenke visited with Mr. Sherman on many occasions, provided prescriptions for pain and constipation, and even supported Mr. Sherman's appeal of the denial of his request for surgery. Finally, it is undisputed that Mr. Klenke ordered further treatment, including work

13

restrictions, a support truss (which Mr. Sherman failed to wear), and a lower-bunk order (which Mr. Sherman declined). The parties differ only on the question of the appropriate level of medication: Mr. Sherman alleges that Mr. Klenke failed to provide an "adequate" level of medication to control his pain. By contrast, Mr. Klenke contends the level of medication was appropriate for a patient in Mr. Sherman's condition, particularly since inguinal hernias are generally not associated with the level of pain that Mr. Sherman reported.

In framing his argument, Mr. Sherman is careful not to allege a simple disagreement over the specific course of treatment; instead, he argues the Eighth Amendment prohibits prison medical personnel from "continuing a course of treatment which they know is ineffective." Mr. Sherman fails to introduce any evidence, however, from which a reasonable jury could infer Mr. Klenke *knew* the dosage of Motrin was ineffective—either for individuals with inguinal hernias generally or for Mr. Sherman specifically. It is undisputed that Mr. Sherman repeatedly informed Mr. Klenke of his pain—both in person and by sending medical requests. But Mr. Klenke was not bound to increase the dosage of pain medication based exclusively on Mr. Sherman's reports of pain. To the contrary, it was Mr. Klenke's professional duty to rely also on his own training and experience in exercising his medical judgment. And "[w]e do not sit as a medical board of review. Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors." *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987);

14

*see also Feder v. Sposato*, No. 11-CV-193 (JFB)(WDW), 2014 WL 1801137, at *9 (E.D.N.Y. May 7, 2014) (unpublished) ("[T]he failure to provide stronger pain medication does not constitute deliberate indifference." (internal quotation marks omitted)).[5]

Lacking evidence that Mr. Klenke had actual knowledge that the prescribed course of treatment was ineffective, Mr. Sherman argues essentially that Mr. Klenke *should have* known it was ineffective—that it "was obvious that the pain medication was not working" and that Mr. Sherman's frequent visits to the clinic demonstrate that Mr. Klenke was "clearly aware" of Mr. Sherman's continued suffering. Certainly, this court has suggested that where a prison doctor "responds to an obvious risk with treatment that is patently unreasonable, a jury may infer conscious disregard." *Self*, 439 F.3d at 1232. But we agree with the district court that no such conclusion can be inferred from this record. Indeed, the only evidence that bears on

---

[5] Mr. Sherman cites several Seventh Circuit cases in support of his argument, but these cases are factually distinct. In *Gonzalez v. Feinerman*, 663 F.3d 311, 312–14 (7th Cir. 2011), and *Greeno v. Daley*, 414 F.3d 645, 654–55 (7th Cir. 2005), inmates brought deliberate-indifference claims against medical personnel who refused to approve surgery (in the case of a hernia) and an endoscopy (in the case of an esophageal ulcer), despite the inmates' increasingly severe symptoms over an extended period of time. In both cases, the inmates were also at times denied pain medication. By contrast, Mr. Klenke provided Mr. Sherman with attentive care. He promptly referred Mr. Sherman to a physician who recommended surgery, and he provided pain medication and other treatments to Mr. Sherman throughout the duration of his care, even though the dosage was at a level Mr. Sherman personally believes was inadequate. Mr. Sherman's treatment is therefore more akin to the inmate in *Johnson v. Doughty*, where the medical providers were keen to the inmate's hernia and responsive to his repeated requests for treatment, even though they agreed surgery was not required. 433 F.3d 1001, 1009–12 (7th Cir. 2006). Under those conditions, the *Johnson* court determined the inmate had failed to establish that the officials acted with a sufficiently culpable state of mind.

the reasonableness of Mr. Klenke's prescribed course of treatment—Mr. Klenke's averment that inguinal hernias "rarely require pain medication" and Dr. Rieger's averment that he generally "do[es] not recommend pre-operative pain medications to patients suffering from inguinal hernias"—tends to demonstrate the course of treatment was in fact reasonable. The district court therefore correctly concluded the record evidence could not support an inference that Mr. Klenke's prescribed treatment was "patently unreasonable."[6]

Absent some evidence that Mr. Klenke knew the level of pain medication prescribed was inadequate to alleviate Mr. Sherman's pain yet consciously chose to continue the treatment notwithstanding that knowledge, Mr. Sherman's claims against Mr. Klenke fail under the exacting Eighth Amendment standard. Thus, the district court correctly granted summary judgment in favor of Mr. Klenke.

## 4. Ms. Montoya

Mr. Sherman claims Ms. Montoya was also deliberately indifferent and is liable in her individual capacity, as well as her supervisory capacity as Health

---

[6] Mr. Sherman challenges the district court's observation that he "fail[ed] to present expert testimony indicating that Mr. Klenke's treatment was completely ineffective or 'patently unreasonable.'" He argues that "[a]n expert could not have more effectively relayed the fact that Mr. Sherman was in pain, and should not be needed for the court to understand that suffering is 'patently unreasonable.'" But the district court's observation that Mr. Sherman provided no expert testimony opining that Mr. Klenke's treatment was patently unreasonable merely underscores the district court's determination that "such a conclusion cannot be inferred from the record." We are therefore not convinced the district court erred by suggesting that expert testimony is one method by which a prisoner may establish the care he received is "patently unreasonable" as contemplated by *Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006). But we express no opinion as to whether expert testimony is necessary to make that showing.

16

Services Administrator, for refusing to provide stronger pain medication or permit Mr. Sherman to change to another care provider. The district court disagreed and granted summary judgment in favor of Ms. Montoya on both theories. We affirm.

As both parties acknowledge, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). And for a claim of supervisory liability to succeed, the plaintiff must establish a subordinate's underlying constitutional violation. *See Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 918 n.7 (10th Cir. 2012). The district court concluded, based on the undisputed evidence, that Ms. Montoya was neither personally involved with nor responsible for Mr. Sherman's specific course of treatment: she was "not involved in treatment decisions made by clinic medical providers and . . . was not qualified to issue or change prescriptions." Having concluded that Ms. Montoya was not personally liable and that Mr. Klenke did not commit a constitutional violation, the court also determined Ms. Montoya could not be held liable in a supervisory capacity.

On appeal, Mr. Sherman stresses that Ms. Montoya was individually liable because she became "independ[e]ntly aware of his pain and [Mr.] Klenke's refusal to take further steps to alleviate it." In support, Mr. Sherman notes that he sent Ms. Montoya messages and even had his mother contact her, but Ms. Montoya did nothing in response. But as the district court explained, the undisputed evidence established that it was not within Ms. Montoya's authority to make treatment decisions or to issue or change prescriptions. Instead, she was responsible for the

17

administration and operations of the medical clinic. The district court therefore correctly granted summary judgment on Mr. Sherman's individual liability claim against Ms. Montoya.

Mr. Sherman's claim of supervisory liability also fails. Mr. Sherman acknowledges that his supervisory-liability claim hinges on this court's determination of Mr. Klenke's liability. As discussed above, Mr. Sherman failed to set forth facts that could establish Mr. Klenke's liability. Absent an underlying constitutional violation, his claim for supervisory liability fails, and summary judgment on this basis was also warranted.

## B. *The District Court Properly Dismissed Claims Against Dr. Creany, Dr. Krebs, CHP, and John Doe*

### 1. Standard of Review

The district court disposed of the remaining claims on a motion to dismiss. We review dismissals pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo, "accepting all well-pleaded factual allegations in the complaint as true." *Howard v. Waide*, 534 F.3d 1227, 1242–43 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Though neither conclusory nor implausible allegations satisfy the pleading standard, "we accept the [well-pled] factual allegations in the complaint as true and we resolve all reasonable inferences in the plaintiff's favor." *Morse v. Regents of the Univ. of Colo.*, 154 F.3d

18

1124, 1126–27 (10th Cir. 1998). And although we construe a pro se litigant's complaint liberally, "our role is not to act as his advocate." *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).

## 2. Eighth Amendment Standard on a Motion to Dismiss

The premise of Mr. Sherman's Eighth Amendment claims against these defendants is delay—that Dr. Creany's grievance denial, and the remaining defendants' delay in approving hernia surgery, caused him unnecessary pain and suffering. But "[d]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (internal quotation marks omitted); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("In order to state a cognizable claim [under the Eighth Amendment], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.")

The level of pain required to satisfy the substantial-harm requirement is unclear. We have recognized "that the substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001). Conversely, we have stated that "not every twinge of pain suffered as the result of delay in medical care is actionable," *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000). Two cases are illustrative of the contours of this requirement. In *Mata v. Saiz*, we concluded that an inmate's evidence of severe chest pain was sufficient, as it went "well beyond a twinge." 427 F.3d 745, 755 (10th Cir. 2005). Indeed, the inmate presented substantial evidence of pain and

19

resulting damage to her heart due to the prison officials' reckless delay in providing appropriate medical treatment. By contrast, in *Olson* we concluded that an inmate's pain in the months before a scheduled heart procedure was not actionable because the doctor was able to alleviate the condition non-surgically and to administer medication. 9 F.3d at 1477.

To make out a cognizable Eighth Amendment claim, a prisoner must also satisfy the subjective component of the standard, which we discussed at length *supra*. *See Sealock*, 218 F.3d at 1209. If an inmate fails to sufficiently allege facts from which an inference can be drawn that prison officials deliberately and unjustifiably delayed medical care, dismissal is warranted. *Self v. Crum*, 439 F.3d 1227, 1235 (10th Cir. 2006). The standard is "akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Id.* at 1231 (internal quotation marks omitted). The inference cannot be drawn from mere negligent acts because such conduct does not constitute "punishment" under the Eighth Amendment. *Id.* at 1235.

**3. Dr. Creany**

The district court properly dismissed Mr. Sherman's Eighth Amendment claim against Dr. Creany because the complaint fails to sufficiently allege Dr. Creany's personal participation in the alleged constitutional violation. "A defendant cannot be liable under a *respondeat superior* theory in a [§] 1983 case." *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983). Rather, "an affirmative link [must] exist[] between the constitutional deprivation and either the supervisor's personal participation, his

20

exercise of control or direction, or his failure to supervise." *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) (internal quotation marks omitted). Indeed, "[p]ersonal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976). And the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher*, 587 F.3d at 1069.

Reading Mr. Sherman's complaint liberally, he asserts Dr. Creany (1) was aware of Mr. Klenke's inadequate course of treatment; (2) failed to properly supervise Mr. Klenke; and (3) improperly denied his grievance against Mr. Klenke. But these bare allegations—without more—fail to satisfy the pleading standard for a claim under § 1983. In particular, as we established above, Mr. Sherman has failed to demonstrate that Dr. Creany's subordinate (Mr. Klenke) committed an underlying constitutional violation, so his supervisory-liability claim cannot succeed. *See Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 918 n.7 (10th Cir. 2012). This leaves Mr. Sherman with the allegation that Dr. Creany improperly denied his grievance. Because the allegation is unconnected to an underlying constitutional violation, Mr. Sherman has failed to establish Dr. Creany's personal participation, and dismissal of Mr. Sherman's Eighth Amendment claim against Dr. Creany was therefore warranted. *See Gallagher*, 587 F.3d at 1069.

21

## 4. Dr. Krebs, CHP, and John Doe

Mr. Sherman raises both Eighth Amendment and negligence claims against Dr. Krebs, CHP, and John Doe. We affirm the dismissal of Mr. Sherman's Eighth Amendment claims, but we reverse the district court's dismissal of his state-law negligence claims.

### a. *Eighth Amendment Claim Against Dr. Krebs*

Mr. Sherman's complaint, read liberally, asserts Dr. Krebs (1) knew Mr. Sherman was in pain and that Dr. Rieger had recommended surgery; (2) knew surgery was the only way to fix Mr. Sherman's hernia; and (3) refused to approve the surgery on two separate occasions, thereby "caus[ing] [Mr. Sherman] unnecessary pain and suffering." Dr. Krebs stresses that these allegations fail to establish the level of "substantial harm" required for the objective component of the Eighth Amendment inquiry, and that they fail to establish the culpable state of mind required for the subjective component.

We assume for purposes of this analysis that the pain was sufficiently serious under the objective component of this inquiry. But the allegations against Dr. Krebs do not warrant an inference that Dr. Krebs's denial of surgery was the result of deliberate indifference to Mr. Sherman's pain. Assuming Dr. Krebs was indeed responsible for denying the surgery that Dr. Rieger twice recommended, this discord—absent other facts—amounts to nothing more than a difference of professional opinion, which cannot give rise to an inference of deliberate indifference. *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977) (noting that

22

two doctors' difference of opinion was insufficient to substantiate an inmate's claim of deliberate indifference).[7]

Mr. Sherman also suggested in his Response to the Defendants' Motion to Dismiss that Dr. Krebs's "motivations [in denying surgery] were financial and his interests lie in the health of CHP rather than [CDOC] inmates such as Mr. Sherman." But this allegation is contained nowhere in his Third Amended Complaint, and we agree with Dr. Krebs that it is speculative and therefore inadequate to defeat a motion to dismiss. *See McDonald v. Wise*, 769 F.3d 1202, 1210 (10th Cir. 2014) (noting that well-pleaded facts in a complaint "must raise a right to relief above the speculative level" (internal quotation marks omitted)). And regardless, we find persuasive the Third Circuit's decision in *Winslow v. Prison Health Services*: "The naked assertion that Defendants considered cost in treating [an inmate's] hernia does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." 406 F. App'x 671, 674 (3d Cir. 2011) (unpublished). We therefore affirm the dismissal of Mr. Sherman's Eighth Amendment claim against Dr. Krebs.

---

[7] Mr. Sherman requests that additional discovery be ordered so that he can uncover the identity of who precisely denied his initial two requests for surgery, if it was in fact not Dr. Krebs. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 390 n.2 (1971) (recognizing that the district court required the government to serve the appropriate individuals where the plaintiff had not named the defendants but had made sufficient factual allegations to support the claim against the unnamed defendants). But discovery is unwarranted where, as here, an inmate's allegations cannot sustain an inference of deliberate indifference against any potential defendant.

b. *Eighth Amendment Claim Against CHP and John Doe*

The district court also properly dismissed Mr. Sherman's claims against CHP and John Doe for failure to state a claim. In asserting CHP (and John Doe) violated the Eighth Amendment, Mr. Sherman's allegations are particularly sparse. He alleges (1) like Dr. Krebs, CHP and John Doe refused to approve his surgery, causing Mr. Sherman unnecessary pain and suffering; and (2) CHP is vicariously liable for the actions of Dr. Krebs.

To begin, even assuming a CHP employee committed an underlying constitutional violation, CHP could not be held vicariously liable for the employee's actions. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) ("[A] private actor 'cannot be held liable solely because it employs a tortfeasor—or, in other words cannot be held liable under § 1983 on a *respondeat superior* theory.'" (emphasis and ellipsis omitted) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978))). Instead, to survive a motion to dismiss, Mr. Sherman was required to sufficiently allege CHP violated the Eighth Amendment under principles of municipal liability. *Id.* (extending the *Monell* doctrine to private § 1983 defendants). "To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996). Because Mr. Sherman has failed to identify any custom or practice of CHP that has a direct causal link to the alleged constitutional violations, dismissal of this claim was appropriate.

24

In his response to CHP's motion to dismiss, Mr. Sherman attempted to cure the deficiencies in his complaint, claiming "evidence will prove that the persistent practice of CHP denying requests for expensive procedures and surgeries was a custom or policy, official or otherwise, which constituted the standard operating procedure of CHP." But that allegation did not appear in Mr. Sherman's Third Amended Complaint, and, absent some exception, we will not consider this additional allegation, since "the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). In his proposed Fourth Amended Complaint, which the district court declined to consider on these claims, Mr. Sherman again tried to cure this deficiency, claiming it was CHP's custom or policy "to reduce overall expenses and maximize bonuses with each fiscal period." Even if we were to consider this cost-cutting policy, the allegation is wholly conclusory and would not cause his claim against CHP to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (noting that a complaint cannot survive a motion to dismiss when it contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). There are simply no facts contained in his complaint from which an inference of such a policy can be gleaned. Because Mr. Sherman's complaint fails to state a claim for municipal liability, the district court properly dismissed Mr. Sherman's Eighth Amendment claim against CHP.[8]

---

[8] Mr. Sherman also named "John Doe" as a defendant in an effort to suss out individuals at CHP—in addition to Dr. Krebs—who may have been involved in denying his surgery. But permitting a claim against a John Doe would be futile, since the allegations in Mr. Sherman's complaint against individuals at CHP amount to

25

c. *Negligence Claim Against Dr. Krebs and CHP*

As a final matter, Mr. Sherman raised a negligence claim against Dr. Krebs and CHP. The district court dismissed the claim against Dr. Krebs for failure to allege his personal participation, and it dismissed the claim against CHP for failure to comply with the certificate-of-review requirement under Colorado law. But the personal-participation requirement exists only for claims raised under § 1983, and a state common-law negligence claim cannot properly be raised against state officials under § 1983. *See Trujillo v. Williams*, 465 F.3d 1210, 1214 n.2 (10th Cir. 2006) (explaining that § 1983 "establishes a cause of action only for deprivation of rights secured by the Constitution or federal law"). Accordingly, the district court improperly dismissed Mr. Sherman's negligence claim against Dr. Krebs on this basis.

To the extent Mr. Sherman's claim can be understood as a state-law negligence claim against Dr. Krebs and CHP under the district court's supplemental jurisdiction, the district court erred in concluding as a matter of law that a certificate of review is required. We review the district court's interpretation of a state statute de novo. *Gordon v. Wadsworth*, 791 F.3d 1182, 1184 (10th Cir. 2015). In doing so, "we must ascertain and give effect to the intent of the legislature and that task begins with the language of the statute itself." *Id.* (internal quotation marks omitted). We also "defer

---

nothing more than negligence, which cannot support an Eighth Amendment claim. *See Self*, 439 F.3d at 1232 (explaining that the Eighth Amendment is not violated "absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment"). In light of this futility, dismissal was proper.

to the most recent decisions of the state's highest court," *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010) (internal quotation marks omitted), while treating opinions of a state's intermediate courts of appeals as highly persuasive, though not binding. *See United States v. Richter*, 796 F.3d 1173, 1185 n.6 (10th Cir. 2015), *cert. dismissed in part*, 136 S. Ct. 1511 (2016), *and cert. denied sub nom. Olson v. United States*, No. 15-7092, 2016 WL 2842489 (U.S. May 16, 2016).

The district court dismissed Mr. Sherman's negligence claim against Dr. Krebs and CHP without prejudice and ordered Mr. Sherman to first satisfy the certificate-of-review requirement before refiling those claims. Mr. Sherman received extensions to file, but ultimately failed to do so. Instead, he filed a Motion for Waiver of Certificate of Review Requirement, which the magistrate judge denied, treating it as a non-dispositive motion for reconsideration. Over Mr. Sherman's objections, the district court affirmed, concluding the certificate-of-review requirement was triggered by the need for expert testimony, and the requirement did not unconstitutionally infringe Mr. Sherman's right of access to the courts. On appeal, Mr. Sherman contends the requirement (1) applies only to claims against licensed professionals and not claims administrators; (2) is not triggered where expert testimony is required unless the claim is against a licensed professional; and (3) functions in operation with the restrictions under the PLRA to unconstitutionally hinder access to the courts.

Mr. Sherman acknowledges that Dr. Krebs, as well as others at CHP, may be licensed to practice medicine or another profession, but he stresses "[Dr.] Krebs was

27

not exercising his expertise as a physician when he was operating as a claims administrator. He was operating as a cost-cutting, resource saving claims administrator when he denied Mr. Sherman's surgery. . . . Only those claims that call into question his practice of medicine [would require a certificate of review], and Mr. Sherman has not brought such a claim." In response, CHP is silent on the question of whether CHP employees are licensed professionals, but it contends the certificate-of-review requirement applies regardless because Mr. Sherman's negligence claim "will require expert testimony to resolve, no matter the creative phraseology he employed in drafting his Fourth Amended Complaint."

To address Mr. Sherman's first two arguments, we turn first to the statute in question, which states, with our emphasis: "[i]n every action for damages or indemnity *based upon the alleged professional negligence* of . . . a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each . . . licensed professional named as a party . . . within sixty days after service of the complaint." Colo. Rev. Stat. Ann. § 13-20-602(1)(a). If the plaintiff fails to file a certificate within sixty days, the defendant "may move the court for an order requiring filing of such a certificate," but only if the "licensed professional defending the claim believes that an expert is necessary to prove the *claim of professional negligence*." *Id*. § 13-20-602(2) (emphasis added). If the court determines a certificate is required, the plaintiff must file a certificate declaring that the plaintiff's attorney (or the plaintiff himself, in a pro se action) "has consulted a person who has expertise in the area of the alleged negligent conduct" and that expert

"has concluded that the filing of the claim . . . does not lack substantial justification."
*Id*. § 13-20-602(3)(a)(I) to (II). This requirement applies whether or not an inmate is represented by counsel. *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1118 (10th Cir. 2004). If the court determines that a certificate is required, and the plaintiff fails to file, such failure requires dismissal of the complaint. Colo. Rev. Stat. Ann. § 13-20-602(4).

The certificate-of-review requirement therefore applies only if (1) the plaintiff brings a claim of alleged professional negligence against a licensed professional, *and* (2) expert testimony is necessary to substantiate the claim. *Id*. § 13-20-601 (legislative declaration explaining that "the certificate of review requirement should be utilized in civil actions for negligence brought against those professionals who are licensed by this state to practice a particular profession and regarding whom expert testimony would be necessary to establish a prima facie case"); *see also Trierweiler v. Croxton & Trench Holding Corp*., 90 F.3d 1523, 1540 (10th Cir. 1996) ("[section] 13–20–602 . . . operate[s] to discourage frivolous claims . . . only with respect to lawsuits filed against licensed professionals."); *State v. Nieto*, 993 P.2d 493, 505 (Colo. 2000) (explaining that "claims made in the same complaint but not based on conduct amounting to professional malpractice or negligence should not be affected by the failure to file the certificate of review"); *Martinez v. Badis*, 842 P.2d 245, 250–51 (Colo. 1992) ("If a plaintiff determines that expert testimony is not required, no certificate need be filed."); *Ehrlich Feedlot, Inc. v. Oldenburg*, 140 P.3d 265, 270 (Colo. App. 2006) ("[A] certificate of review is required where (1) the claim against

29

a licensed professional is based on professional negligence, and (2) expert testimony is required to establish a prima facie case.").

In requiring a certificate of review, the district court erroneously interpreted the statute as being triggered any time an expert is required to establish a prima facie case of negligence against a licensed professional. The district court understood that Mr. Sherman was "not bring[ing] claims against CHP or its employees based on their professional negligence, but rather in their capacity as claims administrators." But it determined that Mr. Sherman would be required to present expert testimony to substantiate his cost-cutting theory. It therefore required Mr. Sherman to first secure a certificate of review to pursue his claims.[9]

As established above, however, the applicability of the certificate of review requirement depends not only on the need for expert testimony, but also on whether the claim is against a licensed professional acting in his professional capacity. It may be true that expert testimony will be required to substantiate Mr. Sherman's claims, and he acknowledges as much, stating in a motion to the district court that "it is likely true that expert testimony will be needed to prove to a jury that denying the surgery violated Mr. Sherman['s] rights." But despite Mr. Sherman's protests, the district court failed to determine whether the claim against Dr. Krebs and CHP was "based upon the alleged professional negligence of . . . a *licensed professional*."

---

[9] After Mr. Sherman raised the issue again in subsequent motions, the district court revisited the matter but reaffirmed its previous ruling that expert testimony would be required.

30

Colo. Rev. Stat. Ann. § 13-20-602(1)(a) (emphasis added). CHP contends on appeal—citing to Colorado insurance law—that Mr. Sherman's cost-cutting theory is invalid because CHP's decisions must be based on "medical necessity." Although claims adjusters may have to consider medical necessity, the statutes cited by CHP do not establish that licensed professionals are required to make this determination.

Moreover, although we "may affirm on any ground apparent in the record, affirming on legal grounds not considered by the trial court is disfavored." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1256 (10th Cir. 2011). Because the district court does not appear to have considered CHP's argument below, and because we find nothing apparent in the record to decide whether CHP employees acted as licensed professionals in managing claims, we reverse and remand to the district court.[10] Because we reverse the district court's determination that a certificate of review was necessary, we do not address Mr. Sherman's argument that the certificate-of-review requirement is unconstitutional.

## IV.  CONCLUSION

Mr. Sherman failed to adequately plead an Eighth Amendment claim against Dr. Creany, Dr. Krebs, CHP, and John Doe, and we therefore AFFIRM the district court's dismissal of those claims. We also AFFIRM the district court's grant of summary judgment in favor of Mr. Klenke and Ms. Montoya because Mr. Sherman

---

[10] Having disposed of each of Mr. Sherman's federal claims, we note it is within the discretion of the district court to decline to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3); *Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 945 (10th Cir. 2001).

31

failed to raise a genuine issue of material fact with respect to the subjective

component of the Eighth Amendment inquiry. Finally, we REVERSE the district

court's dismissal of Mr. Sherman's negligence claim against Dr. Krebs and CHP and

REMAND for proceedings not inconsistent with this opinion.

Entered for the Court


Carolyn B. McHugh
Circuit Judge