Joshua D. SWAN, Plaintiff,

v.

PHYSICIAN HEALTH PARTNERS, INC., a Colorado Corporation d/b/a Correctional Health Partners; and Stephen Krebs, CEO and President of Correctional Health Partners and Chairman of Physician Health Partners, Defendants.

Civil Action No. 15–cv–0103–WJM–NYW

United States District Court, D. Colorado.

Signed 09/08/2016

Joshua D. Swan pro se.

Jacquelynn Nichole Rich Fredericks, Colorado Attorney General's Office, Denver, CO, Jennifer Fawn Kemp, Colorado Department of Law, Denver, CO, Andrew David Ringel, Christina Shavon Gunn, Hall & Evans, LLC–Denver, Denver, CO, for Defendants.

**ORDER ADOPTING IN PART AND REJECTING IN PART JULY 7, 2016 RECOMMENDATION OF MAGISTRATE JUDGE DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

William J. Martínez, United States District Judge

This matter is before the Court on United States Magistrate Judge Nina Y.

Wang's Recommendation dated July 7, 2016 ("Recommendation," ECF No. 64), which recommended denying Plaintiff's Motion for Leave to File Amended Complaint ("Motion," ECF No. 53). Plaintiff filed a timely Objection to the Recommendation. (ECF No. 65.) Physician Health Partners d/b/a Correctional Health Partners ("CHP") and Dr. Stephen Krebs (jointly, "CHP Defendants") filed a response to Plaintiff's Objection. (ECF No. 67.) For the reasons set forth below, Plaintiff's Objection is sustained, the Recommendation is adopted in part and rejected in part, and Plaintiff's Motion is granted.

## I. STANDARD OF REVIEW

■ When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." Whether motions to amend are dispositive is an unsettled issue. *Chavez v. Hatterman*, 2009 WL 82496, at *1 (D. Colo. Jan. 13, 2009) (collecting cases). When an order on a motion to amend removes or precludes a defense of claim from the case, it may be dispositive. *Cuenca v. Univ. of Kan.*, 205 F.Supp.2d 1226, 1228 (D. Kan. 2002). A denial of Plaintiff's Motion in the case at hand would prevent him from resurrecting his case against the CHP Defendants, after it was dismissed on December 2, 2015. Therefore, the Court finds that the matter at hand is dispositive and *de novo* review applies to all portions of the Recommendation properly objected to.

■ An objection to a recommendation is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known as 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that

are at the heart of the parties' dispute." *Id.* In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* In the absence of a timely and specific objection, "the district court may review a magistrate . . . [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985)); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record.").

■ Because Plaintiff is proceeding *pro se*, the Court must liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). The Court, however, cannot act as an advocate for Plaintiff, who must still comply with the fundamental requirements of the Federal Rules of Civil Procedure. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

■ Under Rule 15(a), a court should allow a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a). "[T]he grant or denial of an opportunity to amend is within the discretion" of the Court, but an "outright refusal to grant the leave without any justifying reason" is an abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or *futility of amendment*." *Frank v. U.S. West, Inc.*, 3 F.3d

1357, 1365 (10th Cir. 1993) (emphasis added). Proposed amendments are futile when the amended complaint "would be subject to dismissal for any reason." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999).

The purpose of a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

## II. BACKGROUND

The following allegations—aside from those facts pertaining to the procedural history—are gathered from Plaintiff's Proposed Amended Complaint. (ECF No. 53–1.) The Court assumes these allegations to be true for purposes of this Order.

At all times relevant to his Proposed Amended Complaint, Plaintiff was incarcerated at the Sterling Correctional Facility ("SCF") of the Colorado Department of Corrections ("CDOC"). (ECF No. 53–1

¶ 16.) On February 2, 2013, Plaintiff suffered an injury to his left knee as he attempted to pick up a basketball in a SCF gymnasium. (*Id.* ¶ 18.) Plaintiff submitted a medical kite (*i.e.*, a written request) for treatment of his visibly swollen knee. (*Id.* ¶ 20.) On February 5, 2013, SCF medical staff provided Plaintiff with an aluminum adjustable cane. (*Id.* ¶ 21.) On February 8, 2013, Plaintiff's knee injury was examined by Dr. Maurice Fauvel, a doctor of orthopedics employed by SCF, at the SCF Medical Clinic. (*Id.* ¶ 22.) At that time, Dr. Fauvel said that Plaintiff may have torn his left medial collateral ligament ("MCL") and issued Plaintiff a pair of aluminum crutches. (*Id.*) Plaintiff had an x-ray taken of his left knee on February 22, 2013. (*Id.* ¶ 23.) Plaintiff was examined by Dr. Fauvel again on April 17, 2013, and on May 2, 2013. (*Id.* ¶¶ 24–25.)

At the May 2 visit, Dr. Fauvel determined that an MRI on Plaintiff's left knee "would be needed ... in order to figure out what exactly was wrong and how it should be treated." (*Id.* ¶ 25.) Dr. Fauvel sent a request for an MRI to CHP, which included his findings regarding Plaintiff's injury. (*Id.*) CHP was responsible for the pre-authorization of certain medical procedures for inmates at SCF. (*Id.* ¶ 2.)

On June 13, 2013, Dr. Fauvel had not yet received CHP's response to the MRI request; however, he cautioned Plaintiff that "in his experience, [CHP] nearly always requires extra steps" before approving an MRI request. (*Id.* ¶ 27.) Ultimately, CHP denied Plaintiff's MRI request because "additional information was needed." (*Id.* ¶ 28.)

On August 22, 2013, Dr. Fauvel notified Plaintiff that he had sent a second MRI request which was also denied by CHP. (*Id.* ¶ 29.) CHP recommended that Plaintiff undergo "conservative therapy" before an MRI would be considered. (*Id.*) On

November 15, 2013, Plaintiff met with Dr. Fauvel and complained of continued suffering from knee pain. (*Id.* ¶ 30.) Dr. Fauvel told Plaintiff that he would be scheduled to see a physical therapist, in accordance with CHP's recommended conservative therapy. (*Id.*) On December 11, 2013, Plaintiff met with a physical therapist who told Plaintiff to try certain physical exercises. (*Id.* ¶ 31.) Plaintiff contends that these exercises made Plaintiff feel sharp pain and made his injury worse. (*Id.*)

On December 23, 2013, Plaintiff was seen by Physician's Assistant Gatbel Chamjock at the SCF Medical Clinic. (*Id.* ¶ 33.) Chamjock told Plaintiff that he would be referred to an outside orthopedic surgeon. (*Id.* ¶ 34.) In March 2014, Plaintiff was transported to the Sterling Regional Medical Center where an MRI was conducted. (*Id.* ¶ 35.) On April 22, 2014, Dr. Darrel Fenton from the Sterling Regional Medical Center told Plaintiff that his anterior cruciate ligament ("ACL") needed replacement. (*Id.* ¶ 36.) Dr. Fenton performed surgery on Plaintiff's left knee on June 3, 2014. (*Id.* ¶ 37.)

Based on this course of events, Mr. Swan asserted a 42 U.S.C. § 1983 claim arising under the Eight Amendment for cruel and unusual punishment against the CHP Defendants, Dr. Fauvel, Jamie Soucie, Julie Dursey, and John and Jane Does (collectively, "Defendants"). (ECF No. 1 ¶¶ 33–57.) On March 20, 2015, the CHP Defendants filed a motion to dismiss the claims against them. (ECF No. 20.) Three days later, Dr. Fauvel and Jamie Soucie filed their own motion to dismiss. (ECF No. 23.) On December 2, 2015, the Court granted Defendants' motions to dismiss and dismissed all of Plaintiff's claims against all Defendants without prejudice. (ECF No. 51 at 15–16.) In that Order, the Court expressly allowed Plaintiff to file a motion for leave to file an Amended Complaint no later than January 15, 2016. *Id.*

On January 15, 2016, Plaintiff filed his Motion for Leave to File Amended Complaint along with a Proposed Amended Complaint. (ECF Nos. 53, 53–1.) In the Proposed Amended Complaint, Plaintiff only asserts claims against the CHP Defendants. (*See id.*)

## III. ANALYSIS

The Magistrate Judge found that Plaintiff failed to state a cognizable claim under the Eighth Amendment in his Proposed Amended Complaint. (ECF No. 64 at 8–16.) On that basis, the Magistrate Judge Recommended that Plaintiff's Motion be denied. (*Id.* at 16.)

Plaintiff objects generally to the Magistrate Judge's finding that he failed to plead deliberate indifference by Dr. Krebs and CHP. (ECF No. 56 at 2.) More specifically, Plaintiff objects to the Magistrate Judge's findings that (1) Plaintiff's allegations were conclusory or speculative; (2) Plaintiff fails to allege a proper policy or practice held by CHP to support his Eight Amendment claims; (3) Plaintiff's case boils down to a mere difference in medical opinion between two doctors; (4) Plaintiff's claims are inadequate in light of the Tenth Circuit's recent decision in *Sherman v. Klenke*, 653 Fed.Appx. 580 (10th Cir. 2016); and (5) Plaintiff's allegations are not dissimilar to what non-incarcerated individuals must endure to see a specialist. (*Id.* at 1–5.) Plaintiff also objects on the basis that (6) the Magistrate Judge failed to consider a potential gatekeeping theory of liability against Krebs, and that (7) the Magistrate Judge failed to consider amendment as an alternative to dismissal. (*Id.* at 3, 5.)

### A. *Monell* Liability and Eleventh Amendment Immunity

█ Section 1983 generally applies only to natural persons. However, the Su-

preme Court has held that municipalities can also be held liable as "persons" under § 1983. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Accordingly, to prevail on a municipal liability claim, Plaintiff must establish (1) that a municipal employee committed a constitutional violation, and (2) that a municipal *policy or custom* was the moving force behind the constitutional deprivation. *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998). The Magistrate Judge, citing *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216–17 (10th Cir. 2003), applied the municipal liability doctrine to Plaintiff's claims against CHP because CHP is an entity (*i.e.*, not a natural person) allegedly acting under color of state law. (ECF No. 64 at 7–8.) The Magistrate Judge also found that the Eleventh Amendment does not immunize CHP in this case. (*Id.* at 7.)

None of the parties object to the Magistrate Judge's findings on the applicability of *Monell* liability doctrine and the inapplicability of Eleventh Amendment immunity to CHP. Where there is no objection to the Magistrate Judge's findings, the Court reviews those findings under a "clearly erroneous" standard of review. The Court finds no clear error in the Magistrate Judge's reasoning regarding these findings. Thus, the Court adopts these findings.

## B. Plaintiff's Eight Amendment Claims

 The Eighth Amendment's prohibition against cruel and unusual punishment is violated when prison officials "act *deliberately and indifferently* to serious medical needs of prisoners in their custody." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (emphasis added). An Eighth Amendment claim for deliberate indifference involves "a two-pronged inquiry, comprised of an objective and subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The objective

component requires a showing that the prisoner's medical need was "sufficiently serious." *Id.* A medical need is considered sufficiently serious when "that condition has been diagnosed by a physician as mandating treatment ... or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (citation and internal quotation marks omitted). Under the subjective component, the plaintiff must establish that the defendant "knew [the plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Hunt*, 199 F.3d at 1224 (internal quotation marks omitted).

 In her Recommendation, the Magistrate Judge does not discuss whether or not Plaintiff's Proposed Amended Complaint meets the objective prong of this test. The Court notes, however, that Plaintiff alleges that his knee was noticeably swollen and was diagnosed by Dr. Fauvel as requiring further diagnostic testing. (ECF No. 53–1 ¶¶ 22–24.) Additionally, when an Eighth Amendment claim is based on delayed medical care, as Plaintiff's claim is here, Plaintiff must plead that the alleged deliberate indifference resulted in "substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). Plaintiff's claim is based on the CHP Defendants' delay in approving an MRI test for Plaintiff, which resulted in a delayed surgery. Plaintiff contends that the delay in surgery caused a year of severe, sharp pain along with significant deterioration of his knee beyond the initial injury. (ECF No. 53–1 ¶¶ 32, 52.) Plaintiff's mobility was limited over this time, and the prescribed exercises increased the damage to his knee ligaments. (*Id.* ¶ 32.) On these facts, the Court finds that Plaintiff has sufficiently pled substantial harm. *See Garrett v. Stratman*, 254 F.3d 946, 950

(10th Cir. 2001) ("[S]ubstantial harm requirement may be satisfied by . . . considerable pain."). Therefore, the Court finds that Plaintiff's Proposed Amended Complaint meets the objective prong of the Eight Amendment, deliberate indifference test.

## C. Deliberate Indifference of Dr. Krebs

Plaintiff does not articulate whether his claim against Dr. Krebs is meant to be brought against Krebs in his individual capacity, his official capacity, or both. To the extent that Plaintiff brings a claim against Dr. Krebs in his official capacity, that claim will be treated as a claim against CHP. *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

In her Recommendation, the Magistrate Judge found that there could be no § 1983 liability against CHP unless Plaintiff can in the first instance plead an underlying individual capacity claim, in this case presumably against Dr. Krebs. For that position, the Magistrate Judge cites *Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 747 (10th Cir. 1999). A close review of *Butler* reveals, however, that the Tenth Circuit does not explicitly announce such a rule. Rather, the *Butler* court quoted *Hinton v. City of Elwood, Kansas*, 997 F.2d 774, 782 (10th Cir. 1993), for a somewhat different proposition—that "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Butler*, 172 F.3d at 747.

Whether or not an individual capacity claim is necessary, it is clear that Plaintiff must state some underlying Eighth Amendment violation by one of CHP's officials. In his Proposed Amended Complaint, Plaintiff attempts to allege that Dr. Krebs violated his rights under the Eighth Amendment. Therefore, the Proposed Amended Complaint must meet the subjective prong of the deliberate indifference test by pleading that the Dr. Krebs knew Plaintiff faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it. *See Hunt*, 199 F.3d at 1224.

Plaintiff alleges that Dr. Fauvel told Dr. Krebs that Plaintiff required an MRI in order to make a diagnosis. (ECF No. 53–1 ¶¶ 25–26.) The Court finds that under a liberal construction of the pleadings, this is sufficient to allege that Dr. Krebs knew Plaintiff faced a substantial risk of harm. The next question is whether Dr. Krebs disregarded that risk.

The Magistrate Judge found that Plaintiff failed to allege that Dr. Krebs disregarded a risk to Plaintiff. In making that finding, the Magistrate Judge found that the decision to provide certain diagnostic tests is a matter for medical judgment. *See Self*, 439 F.3d at 1232. The Court agrees that what ultimately turns out to be an incorrect medical decision to require conservative therapy, without more, does not constitute a violation of the Eighth Amendment. (ECF No. 64 at 15.) In this regard, the Magistrate Judge found that Plaintiff had failed to plead anything more than medical negligence—in the face of case law establishing that deliberate indifference is akin to recklessness. (*Id.* at 14.)

Thus, since the Magistrate Judge found that Plaintiff failed to state a claim against Dr. Krebs, she held that by necessity he also failed to state a claim against CHP.[1] Plaintiff objects to the Magistrate Judge's framing of his case as a difference of medical opinion between Drs. Fauvel and Krebs. (ECF No. 65 at 3.) He

---

1. The Magistrate Judge also found that even if Plaintiff did plead an underlying claim against Dr. Krebs, he failed to state a claim against CHP because his policy allegations were "wholly conclusory." (ECF No. 64 at 16.)

disagrees that Dr. Krebs's decision to deny the MRI was a valid medical judgment. Instead, he classifies Dr. Krebs's actions as those of a medical gatekeeper, denying Plaintiff access to treatment. (*Id.*) Generally speaking, a medical professional cannot be said to be acting in a gatekeeper role, as he or she is the one providing treatment. However, if "the medical professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference," he may be liable under a gatekeeper theory. *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). Here, however, Plaintiff does not allege that he was in a medical emergency, nor does he adequately plead that Dr. Krebs knew his role was that of a gatekeeper. Consequently, Plaintiff fails to plead an Eighth Amendment violation under a gatekeeper theory, and Plaintiff's sixth objection is overruled.

■ Plaintiff also argues that he meets the subjective prong by pleading that Dr. Krebs applied CHP's policies which required him to deny the MRI request. (ECF No. 65 at 2.) The Court agrees with Plaintiff that if Dr. Krebs denied the MRI test without making an actual medical decision and in complete disregard to Plaintiff's medical condition, then the subjective prong of the deliberate indifference test would be satisfied. This is precisely what Plaintiff alleges in his proposed Amended Complaint. In this regard, Plaintiff sufficiently pleads in his Amended Complaint that Dr. Krebs denied Plaintiff's MRI request pursuant to CHP policy. (ECF No.

53–1 ¶¶ 49–50.) Thus, Plaintiff's claim succeeds against Dr. Krebs given that he alleges that CHP had a policy to completely disregard prisoners actual, individual medical conditions and deny MRI requests independently of any reasonable medical judgment.[2] The Court will discuss the alleged policy in more detail in the following section.

## D. CHP's Policy

In the Proposed Amended Complaint, Plaintiff alleges that CHP operates based on certain customs and policies. (ECF No. 53–1 ¶¶ 10–13.) Although Plaintiff lists several policies using a variety of different wordings, he essentially alleges two policies: (1) CHP's policy was to be profitable and to provide medical services as cheaply as possible ("Policy A"); and (2) CHP's policy was to deny all (or nearly all) initial requests for MRIs, and then deny subsequent requests until other steps were taken ("Policy B"). (*Id.* ¶¶ 10–12.) (emphasis added).

In her Recommendation, the Magistrate Judge discussed these alleged policies in addressing Plaintiff's individual capacity claim against Dr. Krebs. (ECF No. 64 at 12.) The Magistrate Judge found that the alleged policies were not sufficient to survive dismissal in light of the Tenth Circuit decision in *Sherman, supra.* (*Id.*) In *Sherman*, a plaintiff brought an Eighth Amendment claim against Dr. Krebs and CHP for denying a requested surgery. 2016 WL 3453697, at *1–2, 653 Fed.Appx. at 581–84. The Tenth Circuit found that the plaintiff failed to state a claim beyond a difference in medical opinion. *Id.* at 591, *9. Additionally, the Tenth Circuit dis-

---

**2.** It is conceivable that a doctor may act pursuant to a policy that requires deliberately indifferent action, without having the requisite mental state to be deliberately indifferent himself. However, the CHP Defendants do not argue that is the case here. Furthermore,

Plaintiff alleges that Dr. Krebs is the President and CEO of CHP (ECF No. 53–1 ¶ 45), and thus it is plausible that he would understand the implications of CHP's policies and practices, including potential deliberately indifferent actions.

cussed the plaintiff's argument that CHP and Dr. Krebs were motivated by financial considerations. *Id.* The court noted that plaintiff failed to allege the financial motivations in his Third Amended Complaint, and even if he had, those allegations were too speculative to survive a motion to dismiss. *Id.* The court found persuasive the Third Circuit's decision in *Winslow v. Prison Health Services*: "the naked assertion that Defendants considered cost in treating [an inmate's] hernia does not suffice to state a claim for deliberate indifference." *Id.* (quoting 406 Fed.Appx. 671, 674 (3d Cir. 2011)).

In the case at hand, the Magistrate Judge found that Plaintiff's alleged policies fail for the same reasons. According to the Magistrate Judge, Plaintiff's allegations as to these policies were "wholly conclusory." (ECF No. 64 at 16.) However, Plaintiff objects that his allegations are not conclusory, and that *Sherman* does not operate to foreclose his claims. (ECF No. 65 at 1–5.) The Court agrees with Plaintiff, but only in part. The Court finds that *Sherman* does foreclose Plaintiff's claims under his Policy A claim theory. Plaintiff's assertions that CHP has a policy based on cost are, just as they were in *Sherman,* wholly speculative and conclusory.

 The same cannot, however, be said of Plaintiff's allegations pertaining to his Policy B claim theory, which asserts that there is an automatic, reflexive denial of nearly all initial requests for MRIs. The Court agrees with Plaintiff that these allegations are grounded in sufficient factual bases such that they cannot fairly be read to amount to mere speculation and conjecture. Significantly, in this context, Plaintiff alleges in his Amended Complaint that Dr. Fauvel told him that "in his experience, [CHP] nearly always required extra steps"

before granting an MRI request. (ECF No. 53–1 ¶ 27.) Given that allegation, and giving a liberal construction to Plaintiff's pleadings, the Court finds that such an allegation is sufficient to support Plaintiff's alleged Policy B. Although Policy B may be additionally motivated by cost, those motives are not the same as the ones alleged in *Sherman.* A policy to deny initial MRI requests and require other procedures before approval for same can be obtained is a more calculated and robust policy than one animated simply by financial considerations. As such, *Sherman* does not foreclose Plaintiff's Eighth Amendment claims based on his Policy B claim theory. As a result, the Court sustains Plaintiff's first objection—that Plaintiff's allegations are not conclusory—and his fourth objection—that *Sherman* is not controlling in this case—as to his Policy B claim theory only.

If Dr. Krebs applied Policy B in denying Plaintiff's MRI request—as Plaintiff alleges—then it is plausible that he was not making a medical decision that would be shielded by the law from legal liability. Rather, Dr. Krebs's decision would be according to a policy which requires denying the request absent any medical consideration whatsoever. In effect, there are not two differing medical opinions in this case; there is one medical opinion from Dr. Fauvel and one arbitrary non-medical denial.[3] Accordingly, the Court also sustains Plaintiff's third objection that this case does not involve a mere difference in medical opinion between two doctors.

In applying Policy B, Dr. Krebs would be forced to deny the MRI request regardless of any medical opinion he might have with regard to Plaintiff's medical condition. Thus, according to Plaintiff's allegations,

---

**3.** It is possible that a policy to deny all MRI requests in favor of conservative therapy has some valid medical rationale. However, nothing on the face of the Proposed Amended Complaint leads the Court to reach that conclusion.

Dr. Krebs disregarded Plaintiff's serious medical condition, despite his knowledge of that condition. Therefore, Plaintiff has adequately pled the subjective prong of the deliberate indifference test as to Dr. Krebs. As a consequence, Plaintiff's Proposed Amended Complaint states a valid Eighth Amendment claim against Dr. Krebs.

Furthermore, Plaintiff states a claim against CHP as well if he alleges that a policy or practice of CHP was the moving force behind Plaintiff's constitutional deprivation. *See Myers*, 151 F.3d at 1316. Since Plaintiff does in fact allege that Dr. Krebs's violation arose from his application of CHP's policy, Plaintiff has properly stated a *Monell* claim against CHP. Plaintiff's second objection is thus also sustained, because he has properly stated a policy to support his claims against both of the CHP Defendants. Therefore, the Court rejects the Recommendation to the extent it recommends otherwise, and all further objections are denied as moot.

In sum, Plaintiff's claim against Dr. Krebs may move forward under a theory that Dr. Krebs was deliberately indifferent by acting pursuant to Policy B, and Plaintiff's claim against CHP may also move forward under a *Monell* liability theory in regards to Policy B.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Objection (ECF No. 65) to the Magistrate Judge's Recommendation is SUSTAINED in part and OVERRULED in part as detailed above;

2. The Magistrate Judge's Recommendation (ECF No. 64) is ADOPTED in part and REJECTED in part as detailed above;

3. Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 53)

is GRANTED; the Clerk of Court shall docket said Amended Complaint, currently filed as Attachment 1 to ECF No. 53, as a separate docket entry;

4. Defendant shall answer or otherwise plead to the Amended Complaint by no later than **September 30, 2016**;

5. On or before **September 12, 2016** the Parties shall jointly contact the Chambers of Magistrate Judge Wang to set a Rule 16 Scheduling Conference; and

6. The Stay Order entered at ECF No. 40 is hereby LIFTED.